## Richmond

JOHN C. ECCLES v. COMMONWEALTH OF VIRGINIA.

June 11, 1973.

Record No. 8165.

Present, All the Justices.

*John C. Lowe; F. Guthrie Gordon, III* (*Lowe & Gordon,* on brief), for plaintiff in error.

*William A. Carter, III, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Per Curiam.

John C. Eccles was indicted for selling marijuana, then punishable as a felony under Virginia Code §§ 54-488 and 54-516 (1967 Repl. Vol.). His first conviction by a jury was reversed for a reason not related to this appeal. *See Eccles* v. *Commonwealth,* 212 Va. 679, 187 S. E. 2d 207 (1972). On a second trial Eccles was again found guilty, and judgment was entered in accordance with the jury's verdict. We granted Eccles a writ of error limited solely to a consideration of whether the trial court erred in admitting evidence of prior criminal acts by the defendant.

In February, 1970 Carl R. Deavers, a Virginia state trooper on assignment to the Charlottesville area to do undercover work in the field of drugs, met and became reasonably well-acquainted with Eccles, Bruce Minton and William Matheny. On March 22, 1970

Deavers arranged with Minton, from whom he had previously bought marijuana, to purchase 11 bags of marijuana for $100. Deavers met Minton by prearrangement and at Minton's direction they drove in Deavers' car to an apartment on Jefferson Park Circle occupied by Eccles and others. On arriving at defendant's apartment, Minton told Deavers to wait in the car while he went inside. A few minutes later Eccles and Matheny, who was living with Eccles at the time, came from the apartment and Eccles told Deavers to go into the apartment and wait there with Minton, that they would be back in a few minutes. Deavers observed Eccles and Matheny leave on Eccles' motorcycle. A short time later they returned.

The four went into a back room where Matheny pulled from the pocket of his jacket 15 plastic baggies of marijuana, which he placed on a blanket while Deavers, Minton and Eccles stood around and watched. At Minton's direction, Matheny handed Minton 11 of the bags, selected at random, and he in turn handed them to Deavers. Matheny then gave the other 4 bags to Eccles at the latter's request. Deavers offered to pay Minton a portion of the agreed purchase price at that time, but was advised by Minton that he could pay later. Deavers then left the apartment. The other three men remained there.

The relationship that existed between Eccles, Matheny and Minton was testified to by Deavers, who had apparently infiltrated the group and gained their confidence. The Commonwealth established by cross-examination of Matheny that the marijuana sold to Deavers was part of a supply which Minton had obtained in Boston and which Matheny, Minton and Eccles had been using as a "community property supply of marijuana".

Eccles claimed there was no credible evidence from which the jury could find that he knew a sale of marijuana was being made to Deavers. The Commonwealth points to the common interest that Eccles and his friends had in the marijuana which they had "stashed" away; the consummation of the transaction in Eccles' apartment; the transportation of it on a motorcycle owned and operated by Eccles; the presence of Eccles when delivery was made of 11 packages to Deavers by Matheny and Minton; and the fact that Eccles requested and received 4 packages during the progress of the transaction.

The Commonwealth claims that, since the defense denied "knowledge" that a sale of marijuana was being made, evidence as to defendant's "knowledgeability concerning marijuana" was a circumstance

for the jury to consider. The court agreed, and over the objection of counsel for defendant permitted Trooper Deavers to be asked the following question and to respond thereto:

"Q. What have you seen and heard which tend to indicate the defendant's knowledgeability concerning marijuana?
"A. He was present when there were conversations with reference to drugs, marijuana and other drugs, the different grades of drugs in the Charlottesville area and also I observed him participate in smoking alleged marijuana on different occasions."

Immediately following this testimony, the court instructed the jury that defendant was being tried for selling marijuana to Deavers on March 22, 1970 and that any evidence relating to defendant's smoking of marijuana, which would be a separate offense, should be considered by the jury only insofar as it might be evidence showing a knowledge of "this particular transaction or what the contents of these bags might be or what the expedition was about. . . ."

Our decision here is controlled by *Boyd* v. *Commonwealth*, 213 Va. 52, 189 S. E. 2d 359 (1972). There the defendant sold a Richmond police officer 2 capsules containing heroin. Over Boyd's objection the officer was permitted to testify that he had witnessed two other sales by Boyd a few days previously. The trial court there also instructed that evidence of the commission of prior offenses may not be considered as evidence of guilt of the offense charged, but may be considered by the jury as bearing on the issue of whether the prior offenses constituted part of a general scheme of which the crime charged is a part. We reversed and held:

"Generally, evidence of prior criminal conduct is not admissible except under well defined circumstances. *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 176 S. E. 2d 802 (1970). The prior sales of heroin were unrelated to the October 26 sale. Hence, the evidence concerning the prior sales does not fall within an exception to the general rule. Its prejudicial effect outweighed its probative value. Therefore, we hold that the evidence of prior sales was not admissible." 213 Va. at 53, 189 S. E. 2d at 359-60.

Since we have no way of knowing the effect of the court's admission of testimony as to defendant's prior criminal acts of smoking mari-

juana had upon the minds of the jury, we cannot say that the error was not prejudicial.

The judgment appealed from is reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*