BUMGARDNER, Judge, with whom COLEMAN, J.,
joins, dissenting.
I respectfully dissent and would affirm the conviction. This case does not involve a drug transaction. It arose from the drug scene, but it did not involve trafficking in illegal narcotics. The substance involved was not controlled, and that characteristic is essential when drawing on precedent that involved actual drugs.
Fake or imitation cocaine is innocuous. It is not proscribed, mere possession is not illegal. An imitation substance has two characteristics: (1) it is not a controlled drug, and (2) it imitates, mimics, impersonates, or masquerades as a controlled drug. This case involved a substance that imitated cocaine, specifically crack cocaine, a form of the drug distributed in small bits and chunks roughly the size and shape of rock salt.
When an innocuous substance takes on the physical characteristics of crack cocaine, it becomes virtually useless for its normal purpose. A chip of soap or a bit of nut that looks like a real rock of crack cocaine is useless as soap or a snack because of size alone. It has no utilitarian value other than to be sold as that which it resembles. In this case, the Commonwealth presented evidence of that characteristic of fake crack cocaine, and this Court acknowledged as much in Werres v. Commonwealth, 19 Va.App. 744, 749, 454 S.E.2d 36, 39 (1995). “By its nature, an imitation controlled substance has little or no use other than its commercial value in being misrepresented and sold as a controlled substance.” Id.
*653 The Commonwealth had to prove the defendant knowingly possessed imitation cocaine and intended to distribute it. It had to prove the defendant knew the true nature of the substance: that he knew it was not genuine crack cocaine, that he knew the substance so closely resembled the real thing that it could pass for it. In proving that the defendant knew those two characteristics of the substance, the Commonwealth was entitled to show that the defendant knew fake crack had no use but to be misrepresented and sold as genuine.
The Commonwealth offered this argument: all fake crack cocaine is misrepresented and sold as real cocaine; the defendant possessed fake crack cocaine; therefore, the fake crack cocaine that the defendant possessed was to be misrepresented and sold as real cocaine. Facts tending to prove that the defendant knew the substance had no innocent use would also tend to prove he intended to sell it as real cocaine. The evidence of the defendant’s prior sale supports the premise that all fake crack is misrepresented and sold. It confirms the accuracy of the conclusion; the defendant possessed with the intent to misrepresent and sell. If you knowingly possess something that has no use but to be distributed, then it is logical to infer that you possessed it for that purpose.
At trial, the defendant maintained the evidence showed only that he was arrested while innocently holding a substance that was not an illegal substance. He denied possessing it with intent to distribute it. He admitted acknowledging the substance was “demo,” but that admission only established one aspect of its nature: that it was not a controlled substance. It did not address the second characteristic of this imitation substance; it so resembled the real substance that it had no legitimate use.
The evidence of the earlier sale that the Commonwealth offered fits recognized exceptions to the rule excluding evidence of prior offenses. The evidence showed the defendant knew the true nature of the substance. It showed he was not an innocent bystander accidentally or inadvertently holding the object when the police arrived. It showed the motive for *654 his possession of a useless item. See Charles E. Friend, The Law of Evidence in Virginia § 12-15 (5th ed.1999); McCormick on Evidence § 190 (5th ed.1992).
In weighing the prejudice of the evidence versus its probative value as required by Guill v. Commonwealth, 255 Va. 134, 140, 495 S.E.2d 489, 492 (1998), the prejudice associated with distributing an imitation substance is less than that associated with prior possession of an illegal substance. Knowledge a defendant possessed illegal drugs can inflame a fact finder into misusing the evidence. The volatility is lower when the evidence does not involve distributing illegal drugs but of defrauding those who do. Additionally, a trial judge would not be as susceptible as a jury to prejudicial use of evidence of prior crimes. In this case, the legitimate probative value of the evidence outweighs the incidental prejudice. See Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988), cert. denied, 490 U.S. 1009, 109 S.Ct. 1649, 104 L.Ed.2d 163 (1989).
I believe the nature of the substance involved distinguishes this case from true drug cases in which unrelated prior drug transactions have been repeatedly rejected as evidence. In this case, the prior offense showed much more than a simple propensity to commit the crime charged. Accordingly, I would hold that trial court properly admitted the evidence.